UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL J. EDELMAN INC.,

Petitioner,

-v-

PRIME HYDRATION LLC,

Respondent.

25 Civ. 8904 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

This order resolves a motion by petitioner Daniel J. Edelman Inc. ("Edelman") to quash

document and deposition subpoenas served on it by Prime Hydration, LLC ("Prime"), in

connection with *Mark Anthony International SRL, et al. v. Prime Hydration, LLC*, No. 24

Civ. 7620 (S.D.N.Y.) (the "underlying litigation"), a trade dress infringement action pending

before this Court. Dkts. 2, 26. For the following reasons, the Court denies the motion, while

narrowing the scope of the subpoenas.

I.      **Background**

A.      **The Parties**

Edelman is a communications firm. Dkt. 3 at 2. It was hired by Mark Anthony

International SRL and related entities ("Mark Anthony") to develop a media strategy for

launching "Más+ by Messi," the product line at issue in the underlying litigation (the "product

line"). *Id.*

Prime is an energy drink company. Dkt. 12 at 1. In the underlying litigation, it alleges

that Mark Anthony's product line infringes on Prime's trademarks and trade dress. *Id.*

Greenberg Traurig, LLP ("GT") is Prime's lead counsel in the underlying litigation. GT has represented Edelman in other matters, but it does not do so in this litigation.

**B.    Factual Background**

The Court assumes familiarity with the underlying litigation.

On June 27, 2025, on behalf of Prime, a GT lawyer emailed an Edelman representative concerning subpoenas that GT intended to issue to Edelman in connection with the underlying litigation. Dkt. 3-1 (June 27, 2025 email chain) at 2. The GT lawyer stated that he did not believe that GT's unrelated representations of Edelman conflicted it from subpoenaing Edelman on behalf of Prime, but sought to confirm that Edelman was "comfortable" with its doing so.

On June 30, 2025, the GT lawyer emailed the Edelman representative, noting that the two had spoken by phone three days earlier on June 27, 2025, and confirmed that "other than enforcing our subpoena (if needed) and pursuing our work related to it, GT will pursue no action adverse to Edelman," stating that the subpoenas were "just to get at the information Edelman has relevant to [Prime's] claim against Edelman's client," Mark Anthony. *Id.*

On July 1, 2025, the GT attorney emailed Edelman two subpoenas: one for documents and another for a deposition. Dkt. 29-2 ("Email Chain") at 13. The GT attorney stated that he understood that Edelman had agreed to accept service of these.

On July 14, 2025, outside counsel for Edelman ("Edelman's counsel") responded. *Id.* at 11–12. She disputed that Edelman had agreed to accept service of either subpoena. But, she stated, Edelman would accept service of an updated document subpoena, to which objections would be due within 14 days of service. As to the deposition subpoena, she stated that Edelman was willing to discuss accepting service, but noted that the date, procedure, and any objections to the deposition would need to be resolved beforehand. On July 16, 2025, Edelman's counsel

asked the GT lawyer whether GT had determined whether it had a conflict of interest with respect to Edelman, based on the unrelated representations. *Id.* at 10–11.

On July 17, 2025, the GT lawyer served Edelman, through its counsel, with an updated document subpoena. *See id.* at 9–10. On July 31, 2025, Edelman's counsel sent objections to that subpoena. *Id.* at 9.

On August 13, 2025,[1] the GT lawyer proposed multiple dates before August 16, 2025 to discuss the document subpoena, noting that fact discovery in the underlying litigation would close on September 12, 2025. *Id.* at 8–9. Although the GT lawyer and Edelman's counsel scheduled a call for August 19, 2025, Edelman's counsel that day cancelled the call, stating that the parties were "not on the same page" as to the potential conflict. *Id.* at 5–6. She stated that she would follow up as soon as she could "and certainly by early next week." *Id.*

On August 27, 2025, the GT attorney asked Edelman's counsel for an update. *Id.* at 4. On September 3, 2025, Edelman's counsel stated that "the conflict issue [had] not been resolved" and so the document subpoena "need[ed] to be withdrawn." *Id.*

On September 9, 2025, the GT attorney responded, disputing that a conflict existed but nonetheless withdrawing the document subpoena. *Id.* at 3. The GT attorney stated, however, that, to vitiate the conflict claim, its co-counsel, Stumphauzer Kolaya PLLC ("Stumphauzer"), had issued a document subpoena and a deposition subpoena to Edelman on September 8, 2025 (the "September 8 subpoenas" or "subpoenas").

The September 8 document subpoena sought, by September 12, 2025, documents, communications, and other records related to Mark Anthony's product line. Dkt. 26-6. The

---

[1] In her previous communication, Edelman's counsel had noted that she would return from a vacation the week of August 11, 2025. Email Chain at 9–10.

September 8 deposition subpoena called for testimony by an Edelman representative, on similar topics, by September 29, 2025. Dkt. 26-7.

On September 11, 2025, Edelman's counsel responded, asking that the September 8 subpoenas be withdrawn because they were an "attempt[] to circumvent the conflict . . . by having a puppet firm" issue them. *Id.* at 2. On September 29, 2025, after more communications between Stumphauzer and Edelman's counsel, Stumphauzer proposed to substantially limit the scope of documents that Prime sought. Dkt. 26-11 at 1 (Sept. 29, 2025 email).

### C.    Procedural History

On September 12, 2025, in the Northern District of Illinois, Edelman moved to quash the subpoena, Dkt. 2, and filed a supporting memorandum of law with exhibits, Dkt. 3. On September 29, 2025, Prime opposed, attaching exhibits. Dkt. 12. On October 10, 2025, Edelman replied, attaching more exhibits. Dkt. 16.

On October 20, 2025, the district court for the Northern District of Illinois ordered the case transferred to this District. Dkts. 17–19. On October 28, 2025, the case was assigned to this judge as related to the underlying litigation.

On October 29, 2025, Mark Anthony filed a three-page letter supporting Edelman's motion to quash. Dkt. 21 ("Mark Anthony Letter"). It later filed an unopposed motion to intervene, asking the Court to consider its October 29 letter. Dkts. 27–28.

On November 4, 2025, the Court directed Edelman and Prime to file supplemental briefs applying Second Circuit law. Dkt. 22. Both did so. Dkts. 26 (Edelman), 29 (Prime).

## II.    Discussion

Edelman argues that the subpoenas should be quashed because (1) Stumphauzer, as co-counsel of GT, should be disqualified from seeking to enforce them, and (2) according to

Edelman, the subpoenas are untimely, overbroad, burdensome, and duplicative of information already produced by Mark Anthony in the underlying litigation.[2]

Neither argument has merit.

**A.    Disqualification**

Disqualification is a "drastic measure . . . viewed with disfavor in this Circuit." *Ritchie v. Gano*, No. 7 Civ. 7269, 2008 WL 4178152, at \*2 (S.D.N.Y. Sept. 8, 2008); *see also Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (courts show "considerable reluctance to disqualify attorneys" because such "motions are often interposed for tactical reasons"). A law firm's co-counsel relationship with a conflicted firm does not itself warrant disqualification. *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 235 (2d Cir. 1977). Instead, to determine whether a conflict is imputed to co-counsel, courts analyze the "closeness and extensiveness of the relationship between co-counsel" and, "most importantly, the likelihood that confidential client information has actually been shared." *Benevida Foods, LLC v. Advance Mag. Publishers Inc.*, No. 15 Civ. 2729, 2016 WL 3453342, at \*13 (S.D.N.Y. June 15, 2016) (collecting cases). The party seeking disqualification must present evidence allowing a court to reasonably infer that the conflicted firm transmitted confidential information to co-counsel; there is "no presumption of confidence sharing" between co-counsel. *Id.* at \*12, 15.

Solely for purposes of this analysis, the Court assumes that GT itself would be conflicted from propounding the subpoenas against Edelman, requiring Prime to use its separate counsel, Stumphauzer, to propound and litigate those. Edelman, however, has not adduced any evidence

---

[2] The Court grants Mark Anthony's unopposed motion to intervene under Federal Rule of Civil Procedure 24(a), *see MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006) (citing Fed. R. Civ. P. 24(a)(2)), and has considered its letter supporting Edelman.

whatsoever that GT shared with Stumphauzer confidential information from its unrelated representations of Edelman. Edelman's only support for its inflammatory claim that Stumphauzer is acting as GT's "puppet counsel" is empty rhetoric. The material that GT gave Stumphauzer, as attested to by Stumphauzer's lead counsel, was related to the underlying litigation: an overview of the underlying litigation; documents that Prime had obtained from Mark Anthony (including those related to Edelman); and the subpoenas that GT had initially sent to Edelman and later withdrew. Dkt. 29-1 (Kolaya declaration) ¶¶ 4–8.[3]

Stumphauzer's disqualification is therefore clearly unwarranted. *See, e.g.*, *Benevida Foods*, 2016 WL 3453342, at *16 (no grounds for disqualification where movant relied "solely on speculation"). Edelman's claim to the contrary borders on frivolous.

### B.    Timeliness and Proportionality

***Timeliness.*** Edelman next argues that the subpoenas are untimely because they were served on September 8, 2025 (four days before the close of fact discovery) and called for compliance on or after that deadline. *Accord* Mark Anthony Letter at 1. Edelman's use of that date is badly misleading. In fact, Prime served substantially similar subpoenas on Edelman on July 1, 2025—more than 10 weeks before the fact discovery deadline. It later withdrew these only because Edelman had asserted an unwaived conflict involving GT. Email Chain at 12–13. And the emails between July and September 2025 among counsel for Edelman, GT, and Stumphauzer suggest gamesmanship by Edelman's outside counsel—to wit, attempts to run out the clock on fact discovery—while GT attempted in good faith to pursue the subpoenas and work

---

[3] *Fund of Funds, supra*, to which Edelman likens this case, is thus totally inapposite. There, a conflicted firm used privileged information it had obtained through its representation of a client to assist a co-counsel in bringing securities actions against the client. 567 F.2d at 236. The Second Circuit held that these "extraordinary, sui generis facts" required disqualification of the co-counsel. *Id.* at 227, 235. Nothing of the sort happened here.

through the potential conflict. *See, e.g.*, Email Chain at 2–12. Under these circumstances, the subpoenas were not untimely.

***Proportionality.*** Edelman next argues that the subpoenas are overbroad, burdensome, and duplicative of party discovery. Edelman attacks a straw man. Prime has already offered to significantly narrow the scope of the subpoenas—offers that Edelman has refused, apparently to preserve its claims of overbreadth and the like. Specifically, Prime has offered to limit the discovery it seeks to Edelman's internal documents from a four-month time period (*i.e.*, between February and June 2024) with certain custodians and responsive to reasonable search terms. The documents to be produced would therefore *exclude* any documents that Prime has or could have obtained from Mark Anthony directly (*e.g.*, communications between Edelman and Mark Anthony). Edelman does not offer any reason why the deposition subpoena, if similarly limited to topics fairly raised by the above documents, would be disproportionate. With these reasonably tailored modifications, the subpoenas are proportional under Federal Rule of Civil Procedure 26(b)(1). *See, e.g.*, *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) (denying motion to quash non-party subpoena where issuing party reasonably narrowed subpoena's scope).

## CONCLUSION

For the reasons above, the Court denies Edelman's motion to quash. The Court, consistent with Prime's offer, limits the scope of the document subpoena to cover Edelman's internal documents between February and June 2024 with reasonably limited custodians and responsive to reasonable search terms. The Court limits the deposition subpoena to require a one-day deposition under Federal Rule of Procedure 30(b)(6), not to exceed eight hours, on topics consistent with the narrowed scope of documents described immediately above.

7

The Court is profoundly unimpressed by Edelman's gamesmanship and will not tolerate or countenance further delay.  The Court accordingly orders the following.

By **Tuesday, December 16, 2025**, Prime is to furnish a document subpoena to Edelman that is conformed to the narrowed scope above.  The parties are directed thereafter to confer promptly as to any implementation issues.  Edelman is directed to complete its production of documents pursuant to the subpoena by **Friday, January 2, 2026**.

As to the deposition, it is to be held by **January 16, 2026**.  The parties are to agree by Thursday, December 18, 2025 on the date of the deposition.  If the parties cannot agree, they are to submit a joint letter to the Court by noon on December 19, 2025, with each setting out three available dates, and the reasons they claim to be unavailable on the dates offered by others.  Based on that submission, the Court will choose a deposition date.

The Clerk of Court is respectfully directed to terminate all pending motions and close this case.


SO ORDERED.


_Paul A. Engelmay_
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: December 12, 2025
        New York, New York

8